IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRIC OF MISSOURI

| | |
|---|---|
| **ANTONIO WEBB**<br><br>      **Plaintiff,**<br><br>v.<br><br>**FEDEX FREIGHT, INC.**<br>Serve Registered Agent:<br>CT Corporation System<br>120 South Central Ave.<br>Clayton, MO 63105<br><br>      **Defendant.** | Case No. _____ |

## PETITION

COMES NOW Plaintiff Antonio Webb, by and through counsel, and this Complaint against Defendant FedEx Freight, Inc. (hereinafter referred to as "FedEx"), states and alleges as follows:

## NATURE OF THE CLAIMS

1. This matter is an action for legal and equitable relief to redress the deprivation of Plaintiff's civil rights pursuant to 42 USC § 2000e *et seq.* and 42 U.S.C. §1981, and for retaliation in violation of 42 U.S.C. § 1981.

2. Defendant is a corporation organized and existing under the laws of the State of Tennessee, and with its principal office located at 8285 Tournament Dr., Building C, Memphis, TN 38125-1745. Defendant is authorized to do business in the State of Missouri with its registered agent, CT Corporation System, located at 120 South Central Ave., Clayton, MO 63105; it is in the business of transportation, e-commerce and other services in the State of Missouri generally.

1

3. At all times pertinent hereto, all employees and agents of Defendant were acting in their individual capacity and also as agents of Defendant within the course and scope of their employment and authority in furtherance of the business of Defendant. All the acts and omissions of the employees of Defendant are imputed to their employer who is liable for such acts and omissions.

4. Plaintiff is an individual resident of Saint Charles County, Missouri, who, at all times mentioned herein, was employed by Defendant at its location in the City of Saint Charles, Missouri.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims enumerated herein pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d) because Defendant maintains consistent and continual contact in the State of Missouri, conducts significant amounts of business transactions, and maintains a business and physical presence within the State of Missouri.

## ADMINSTRATIVE PROCEEDINGS

7. On or about April 22, 2021, Plaintiff timely filed a charge of race, religion, and disability discrimination against Defendant with the Equal Employment Opportunity Commission. A copy of Plaintiff's charge(s) of discrimination is attached hereto as Exhibit "A," and by this reference is made a part hereof.

8. Plaintiff's Right to Sue Notice from the U.S. Equal Employment Opportunity Commission is dated November 22, 2021. A copy of Plaintiff's Notice of Right to Sue is attached hereto as Exhibit "B".

9. This action has been timely filed with this Court and Plaintiff has fully complied with all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

10. At all times mentioned herein, Plaintiff was lawfully employed as a Road Driver worker at Defendant for roughly two years starting from on or about January 2019, until his effective discharge on or about October 23, 2020.

11. At all times herein, within Defendant policies, is an Anti-Harassment Policy prohibiting harassment based upon race, color, sex, and disability (among other categories).

12. At all times herein, Defendant's Accommodation and Nondiscrimination Policy states Defendant "makes reasonable accommodations (e.g., a change to the work environment or a change to normal policies or procedures) to enable qualified applicants and employees to safely perform the essential functions of the job for which they are applying or in which they are working".

## DISABILITY DISCRIMINATION

13. During the month of August 2020, Plaintiff was diagnosed with Acute Bronchitis and Wheezing.

14. Due to Plaintiff's condition, he temporarily stopped working and was approved for a leave of absence, pursuant to the federal Family and Medical Leave Act (FMLA), from approximately August 14, 2020, to September 2, 2020.

15. Upon returning to work on September 4, 2020, Plaintiff was suffering from a breathing issue and could not work on the dock due to his inability to breath the air.

16. Plaintiff was told to go home by Mike, Road Safety Advisor for Defendant.

17. Due to his medical issue, Plaintiff followed company policy and requests by reporting to an approved Defendant appointed Medical Examiner to undergo a physical examination from the U.S. Department of Transportation Federal Motor Carrier Safety Administration.

18. Pursuant to The Federal Motor Carrier Safety Regulations (FMCSA), 49 CFR 391.41-391.49, Defendant required Plaintiff to undergo a physical examination to ensure that he met the minimum qualifications to complete his driving duties and operate a tractor-trailer.

19. Plaintiff reported for his physical examination on September 11, 2020, as required.

20. During the evaluation, Plaintiff described his medical condition and breathing issues to the examiner.

21. Plaintiff was informed by the medical examiner that pursuant to 49 CFR 391.41-391.49, the medical examiner's task is to confirm whether Plaintiff is physically qualified to operate in his capacity as a driver. Plaintiff was also informed that the medical examiner's task is not to determine the physical qualifications for any other duties beyond his driving duties.

22. Based on the evaluation, Plaintiff was deemed physically qualified for driving duties and received the confirmed Medical Examiner's Certificate.

23. When Plaintiff returned to work, he brought the certificate for confirmation and asked Terminal Manager, Brendan Wright, if he could be placed on a different assignment, that does include the dock, or be provided a respiratory mask.

24. Mr. Wright declined both of Plaintiff's requests.

25. Plaintiff again asked if he could simply drive the tractor trailer and voluntarily decrease wages by foregoing the extra dock pay.  Plaintiff also offered to make extra driving routes as necessary to other locations, as many drivers did not prefer to do extra driving. Plaintiff was also denied that request. Plaintiff asked why he was being forced to work on the dock, while others were allowed to choose not to work on the dock, and Plaintiff was informed he had to "because they said so".

26. Plaintiff was told to go home, since he could not work on the dock.

27. Based on Plaintiff's position as a Road Driver, Defendant's job requirements states that Plaintiff may be required to perform job duties of a city driver or a dock employee where operationally necessary.

28. Plaintiff was instructed to make another appointment with the medical examiner and have the examiner detail the reasons Plaintiff cannot work on the dock.

29. Plaintiff also received a letter on October 5, 2020, stating that he needed to be re-qualified by the medical examiner, despite previously obtaining the Medical Examiner's Certificate less than one month ago.

30. On or about October 12, 2020, Plaintiff was called into the office of Mike, Road Safety Advisor, along with two other employees Plaintiff did not know.

31. Mike discussed Plaintiff's disability in the office, in front of the two other unknown males. Mike described Plaintiff's medical condition and read off Plaintiff's medical issues to everyone in the room.

32. That same day, October 12, 2020, Plaintiff had an appointment with a pulmonologist for his breathing issues.

33. Plaintiff completed a Pulmonary Function Test and was medically diagnosed with asthma.

34. The pulmonologist cleared Plaintiff to return to work, with the limitation that he does not work in an area specifically like the dock with different irritants, dust and other allergens that exacerbates his pulmonary condition.

35. Later that same day, October 12, 2020, Plaintiff completed another physical examination from the medical examiner, as requested by Defendant.

36. During the examination, Plaintiff asked the examiner and explained that he needed included in the examination the reasons why Plaintiff could not work on the dock.

37. Plaintiff was again informed by the medical examiner that pursuant to 49 CFR 391.41-391.49, the medical examiner's task is to confirm whether Plaintiff is physically qualified to operate in his capacity as a driver. Plaintiff was also informed that the medical examiner's task is not to determine the physical qualifications for any other duties beyond his driving duties.

38. Based on the evaluation, Plaintiff was deemed physically qualified for driving duties and received another confirmed Medical Examiner's Certificate.

39. When he returned to work, Plaintiff was still forced to work on the dock and continued to have substantial breathing, shortness of breath, wheezing and coughing issues.

40. On or about October 20, 2020, Plaintiff was called into a meeting with the Employee Relations Advisor and Assistant Service Center Manager. They began to discuss his condition and Plaintiff again explained his physical inability to work on the dock with significant complications. Plaintiff was told that despite his condition, he still needed to work on the dock.

41. On or about October 21, 2020, Plaintiff was working at a different facility in Effingham, Illinois, and the Operations Manager informed Plaintiff that he did not care whether Plaintiff worked on the dock, but Defendant's Saint Charles facility stated that Plaintiff had to work on the dock.

42. Plaintiff refused to work on the dock and provided a written statement to Defendant's Effingham, IL, facility.

43. On or about October 22, 2020, Plaintiff returned to the Saint Charles facility and was again told to work on the dock. He was also told by the Service Central Manager, that he needed a letter from a physician stating the reasons he cannot work on the dock.

44. That same day, October 22, 2020, Plaintiff's pulmonologist provided a letter to Defendant, stating Plaintiff is cleared to work, with the limitation that he cannot work in an area specifically like the dock with different irritants, dust and other allergens that exacerbates his pulmonary condition.

45. That same day, October 22, 2022, Defendant's Specialist Safety Compliance manager, then sent an email to multiple employees and managers, stating Plaintiff was medically disqualified and must have his asthma condition documented or addressed on the physical examination by the medical examiner.

46. On or about October 23, 2020, despite completing their request for the physician note, Defendant informed Plaintiff that he is medically disqualified and needed to complete another physical examination from their medical examiner; that the examination needs to show no limitations, including his diagnosis of asthma. Brendan Wright, Terminal Manager, informed Plaintiff that he had to work on the dock and that if he could not, then he could not work for Defendant.

47. That same day, October 23, 2020, Plaintiff was randomly singled out by Don Marischen, in front of other colleagues and told "get in the meeting". Plaintiff was not aware that a meeting was scheduled, and stated as such. Plaintiff saw four other managers in the meeting room and requested a witness to be present on his behalf. Plaintiff did not want to enter the meeting without a witness. Plaintiff was subsequently told, "stop acting like a kid and get on in there, or you won't have a job".

48. In the meeting, Plaintiff was told that his medical conditions needed to be removed in order to return to work. Subsequently, Plaintiff was told that his medical condition needed to be detailed in his physical examination to satisfy compliance with FMCSA Part 391.41.

49. Plaintiff's employment status, along with his medical condition was discussed amongst several employees in the building against Defendant's policy, many of whom were not authorized to know Plaintiff's health history.

50. On or about October 23, 2020, Plaintiff was sent home without pay and told that he could not return.

51. Despite Defendant requiring another physical examination, Plaintiff was never deemed unqualified to drive by the medical examiner and had previously completed two examinations within the span of one month.

52. At all times herein, Plaintiff complied with the requests and requirements of Defendant.

53. Plaintiff was deemed to be on unauthorized leave, despite Defendant telling Plaintiff to go home until he is medically qualified.  However, Plaintiff was never medically disqualified by the standards of FMCSA Part 391.41 and Defendant continuously modified the compliance standards.

54. Plaintiff was told that if he wanted to return to work, based on his medically disqualified status, he would have to re-apply for his position and start the entire hiring process from the beginning.

### COUNT I
### Violation of ADA

55. Plaintiff adopts and incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

56. During the course and scope of Plaintiff's employment, Defendant's agents, employees and representatives, acting within the course and scope of their employment, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiff based on his disability, in violation of the Americans with Disabilities Act, 42 U.S.C.A. § 12101 *et seq*.

57. Plaintiff is a qualified individual to be covered by the Americans with Disabilities Act, and was found to be able to perform the essential functions of his work.

58. The harassment and discrimination shown through the limitations that adversely affected the status of employment, termination, and the unfair and unregulated tendencies to not follow the anti-harassment policies and laws, by Defendant's management had the purpose and effect of unreasonably interfering with Plaintiff's work performance thereby creating an abusive, hostile, offensive and intimidating work environment.

59. Plaintiff was not provided equal treatment as other employees, as other employees who did not have disability could choose whether they wanted to work on the dock.

60. Defendant violated Plaintiff's civil rights by terminating Plaintiff's employment based on his request for a reasonable accommodation, unlawful treatment based upon Plaintiff's disability, intimidation based upon Plaintiff's disability, and denial of the same terms and conditions of employment including job restructuring and equal protection given to other employees but denied Plaintiff because of Plaintiff's disability.

61. The actions and conduct of Defendant's agents, employees and representatives, acting within the course and scope of their employment, created an abusive, hostile, offensive and intimidating work environment by allowing disability discrimination by several other employees, supervisors and management staff, unfair and unregulated tendencies to not follow anti-harassment practices, and discriminatory punishment practices of management, thereby detrimentally affecting Plaintiff.

62. The ratification of disability discrimination by several other employees, supervisors and management staff, unfair and unregulated tendencies to not follow anti-harassment practices, and discriminatory punishment practices of management would have detrimentally affected a reasonable person of the same disability in the same or similar circumstances as Plaintiff.

63. Management level employees knew or should have known of the unlawful treatment and disability discrimination problems described herein, but failed to address the problems and further failed to practice effective and appropriate procedures to stop and remedy the disability discrimination.

64. Defendant fostered a hostile and abusive work environment where Plaintiff worked by failing to provide an effective disability discrimination training program for supervisors, managers and employees, in general.

65. The conduct of Defendant and Defendant's supervisors, managers and employees, in treating or allowing other staff to treat Plaintiff unlawfully because of his disability was severe and pervasive enough to create a work environment that a reasonable person under the same or similar circumstances would consider hostile and abusive.

66. By failing to provide a reasonable accommodation for Plaintiff's disability, Defendant exacerbated the discriminatory and hostile work environment to which Plaintiff was subjected.

67. Plaintiff has been (and continues to be) damaged as a direct and proximate result of Defendant's actions. Plaintiff has suffered injuries including, but not limited to:

    a. emotional pain and suffering;
    b. insult;
    c. mental distress;
    d. embarrassment;
    e. humiliation;
    f. lost wages;
    g. anxiety; and
    h. inconvenience.

WHEREFORE, Plaintiff Damarcus requests that this Court, after a trial by jury of his claims, enter Judgment against Defendant granting such relief as may be appropriate, including: a finding that he has been subjected to unlawful conduct prohibited by 42 U.S.C.A. § 12101 *et seq.;* reinstatement; injunctive orders; such actual and noneconomic damages as are fair and reasonable; Plaintiff's reasonable attorneys' fees, expert witness fees and expenses as provided by 42 U.S.C.A. § 12101 *et seq.,* the costs of this action; and for such further relief as the Court deems just and proper.

## COUNT II
## ADA RETALIATION

68. Plaintiff adopts and incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

69. This action is brought pursuant to 42 U.S.C. § 2000e et seq.

70. Plaintiff's filing and medical absence related to his FMLA request constituted a protected activity.

71. Due to Plaintiff's filing and request for reasonable accommodation, Defendant retaliated against Plaintiff resulting in him being unfairly disciplined and discharged.

72. At all times mentioned herein, the above-mentioned management and supervisory staff of Defendant were agents, servants and employees of Defendant acting within the course and scope of their employment.

73. Defendant's actions against Plaintiff were intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

74. At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

75. Plaintiff has been (and continues to be) damaged as a direct and proximate result of Defendant's actions. Plaintiff has suffered injuries including, but not limited to:
    a. emotional pain and suffering;
    b. insult;
    c. mental distress;
    d. embarrassment;
    e. humiliation;
    f. lost wages;
    g. anxiety; and
    h. inconvenience.

WHEREFORE, Plaintiff requests that this Court, after a trial by jury of his claims, enter Judgment against Defendant granting such relief as may be appropriate, including: a finding that he has been subjected to unlawful conduct, including disability discrimination, harassment and retaliation, prohibited by U.S.C.A. § 12101 *et seq.;* reinstatement; injunctive orders; such actual and noneconomic damages as are fair and reasonable; Plaintiff's reasonable attorneys' fees, expert witness fees and expenses as provided by 42 U.S.C. § 2000e 5(k), the costs of this action; and for such further relief as the Court considers just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Respectfully submitted,

**PK LAW GROUP**

/s/ *Phillip C. Strozier*
PHILLIP C. STROZIER, MO #68803
107 W. 9th St.
Kansas City, MO 64105
(816) 929-8777 Phone
(816) 929-8791 Fax
pstrozier@pklawgroup.com
**ATTORNEY FOR PLAINTIFF**